STATE of Maine

v.

Thomas S. WILSON.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1983.

Decided March 7, 1983.

Janet T. Mills, Dist. Atty., (orally), Auburn, for plaintiff.

Isaacson, Isaacson & Hark, Elliott Epstein (orally), Lewiston, for defendant.

Before McKUSICK, C.J., NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

After a jury trial in the Superior Court (Androscoggin County), defendant appeals from convictions for violations of 17–A M.R.S.A. § 207 (1983) (assault) and 17–A M.R.S.A. § 454(1)(B) (1983) (tampering with a witness), arguing that the court erred in: (1) refusing to exclude certain testimony as a necessary sanction for an alleged violation by the State of M.R. Crim.P. 16; (2) refusing to grant the jury's request to have portions of the trial testimony read back to them during their deliberations; and (3) failing to compel the testimony of a defense witness or declare a mistrial after that witness refused to answer any further questions. We deny the appeal.

On February 1, 1982, the defendant, Thomas S. Wilson, and Richard Gauthier, while inmates at the Androscoggin County Jail, were involved in an altercation in the jail's dining hall. During that altercation, which was witnessed by several officers and other inmates, Wilson punched Gauthier in the face.

At the trial, Wilson testified that the altercation arose out of an argument with Gauthier over Gauthier's failure to provide him with marijuana. Wilson testified that at the time of the incident Gauthier made a threatening gesture with his fist as if he was going to strike him, and that he hit Gauthier simply to protect himself. Gauthier, on the other hand, consistently with the underlying charges in this case, testified that Wilson struck him without provocation simply because Wilson believed that he was going to testify against another inmate in an unrelated criminal case.

I.

On the morning of the trial, March 16, 1982, sometime before the jury had been chosen, one of the jail deputies learned that an inmate, Fred Adams, might be able to provide relevant testimony. This information was given to the deputy by Mr. Gauthier, who was still a resident of the jail. After Adams was interviewed by the office of the District Attorney, a note was sent to the courtroom describing Adams' statement and his present whereabouts. This note was delivered to the Assistant District Attorney handling the trial, who then brought it to the attention of defense counsel and also the presiding justice. The presiding justice declared a recess to allow both attorneys an opportunity to interview Mr. Adams. Upon completion of the interview, counsel reported to the court that the proffered testimony of Mr. Adams included: an eyewitness description of the assault which was corroborative of the testimony of the victim; an incriminating admission made by the defendant to Adams which would undercut a theory of self-defense and support the charge of tampering with a witness; and evidence that the defendant used a dangerous weapon (a sock full of batteries) in the course of the assault.

In view of Adams' statement concerning the use of a dangerous weapon, the State requested a continuance in order to seek re-indictment. Defense counsel requested that Adams' testimony be excluded. The trial justice declined to exclude the testimony, but offered the defendant a continuance on whatever terms defense counsel believed necessary to minimize any unfair surprise. Defense counsel, after a further recess,

elected to go forward with the trial without delay.

■ On appeal, the defendant now argues that the court erred in refusing to exclude Adams' testimony as a necessary sanction pursuant to M.R.Crim.P. 16(d). The defendant contends that by failing to provide him with Adams' statement prior to the morning of trial, the State violated the mandatory disclosure provisions of M.R. Crim.P. 16(a), or alternatively, the provisions for court-ordered disclosure under M.R.Crim.P. 16(c)(1). Although the defendant does not argue that the prosecution had actual knowledge of Mr. Adams' testimony, he asserts that the prosecution's lack of knowledge resulted from its failure to make a diligent inquiry (relying upon *State v. Ledger*, 444 A.2d 404, 411 (Me.1982); *State v. Simmons*, 435 A.2d 1090, 1093 (Me.1981); *State v. Thurlow*, 414 A.2d 1241, 1244 (Me. 1980)). The Superior Court did not find that a discovery violation had occurred nor did it conclude that the inquiry of the prosecution was less than diligent. On appeal the defendant has not established that a finding of lack of diligence is compelled by the evidence nor that any assumed finding to the contrary would be erroneous. Since the record does not establish that Adams' statement was either within the possession of the prosecution, or unavailable because of the lack of diligent inquiry on the part of the prosecution, there is no basis upon which to consider the existence of a discovery violation. Accordingly, the Superior Court committed no error in declining to exclude the testimony of Adams.

## II.

The second claim of error made by the defendant relates to the trial justice's refusal to have testimony read back to the jury.

The jury had deliberated for approximately one and one-half hours when it requested, in writing, that specified portions of the trial testimony be read back to them. They requested the reading of those portions of Adams' testimony pertaining to his conversation with the defendant on the morning of the incident, and the testimony of one Deputy Sheriff Dickey concerning his observations of the altercation.[1] The trial justice refused to have those portions of the testimony read back, stating that it was not his practice to do so.

We recently held in *State v. Hebert*, 455 A.2d 925, 930 (Me.1983) that the presiding justice is obligated to respond to a reasonable request from the jury to resort to the record. As in *Hebert*, the jurors' request in this case was reasonable, and the court's refusal therefore constitutes an abuse of discretion. Unlike *Hebert*, however, counsel in this case failed to object at the time of the court's ruling[2] and we deal with the issue on the basis of obvious error.

■ A careful reading of the requested portions of the testimony persuades us that no manifest injustice resulted from the court's failure to require a read-back.

The requested testimony of Adams is limited to a statement that the defendant told him that he was going to "mess up" Gauthier. Deputy Sheriff Dickey's testimony relates to his observations of the altercation. Both witnesses testified on behalf of the State and the requested testimony was strongly corroborative of the State's case. With the exception of the testimony of the victim, the requested testimony would appear to be the most damaging evidence offered against the defendant. It offered no basis for exculpation on either count of the indictment. We conclude, beyond a reasonable doubt, that the jury would not have resolved the issue differently had the re-

1. We have been able to reconstruct the content of the jury note from the limited record available. However, we strongly urge the justices of the Superior Court to read such jury notes into the record verbatim or preserve the actual note as part of the record, in order to facilitate appellate review.

2. The Assistant District Attorney objected to the court's ruling while the defense counsel expressly stated that he had no objection.

quested testimony been read back to them. *See State v. Powell,* 452 A.2d 977, 978 (Me. 1982).

### III.

At trial, the defendant called a fellow-inmate, Jeffrey Weintraub, as a witness. After preliminary questions by defense counsel, Weintraub refused to answer any further questions, invoking his Fifth Amendment privilege in the presence of the jury.

On appeal, for the first time, the defendant argues that the court's failure to compel Weintraub to testify deprived him of a fair trial. Additionally, notwithstanding the absence of any objection at time of trial or of any request for mistrial, the defendant now argues that the prejudice resulting from Weintraub's refusal to testify amounted to manifest injustice and that the court erred in not ordering a mistrial *sua sponte.*

■ We are not required to address the issue raised by the defense. The record reflects that defense counsel knew, prior to calling the witness, that the witness was likely to invoke his Fifth Amendment privilege and refuse to answer any questions concerning the assault. Having invited the result, the defendant cannot now claim error. *See State v. Gray,* 407 A.2d 19, 20–21 (Me.1979).

The entry must be:

Judgments of conviction affirmed.

All concurring.