**STATE of Maine**

v.

**Charles GREENE, III.**

Supreme Judicial Court of Maine.

Argued May 5, 1986.

Decided July 11, 1986.

R. Christopher Almy, Dist. Atty., Philip Worden, Asst. Dist. Atty. (orally), Bangor, for State.

Henry Meyer (orally), Lewiston, for defendant.

Before McKUSICK C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, Charles Greene, III appeals from a judgment entered by the Superior Court (Penobscot County) upon a jury verdict convicting him of eight counts of Gross Sexual Misconduct (Class A), 17–A M.R.S.A. § 253(1)(B) (1983) and one count of Criminal Threatening with a Dangerous Weapon (Class C), 17–A M.R.S.A. § 209 (1983).[1] He challenges the trial court's denial of his motions for discovery, bill of particulars, and judgment of acquittal; the prosecutor's closing argument; and the sufficiency of the evidence. Finding no error, we affirm the judgment.

## I. *The Evidence*

The jury would have been warranted in finding the following facts. The ten-year-old victim was living with her father and brother in Bangor during the summer of 1983. In July or August, Greene, whom her father had befriended, moved into their house. One night, the victim awoke and felt the defendant touching her "private parts" with his hand. He told her he was tucking her in. About three months after he moved into the house, Greene, whom the victim called "Uncle Charlie," purchased a trailer, which he parked in the yard. Although she could not recall the timing of the incidents, the victim described in detail two occasions in which she and Greene participated in oral sex and other incidents involving other sexual acts. Between the time Greene moved into the trailer and when he left in June of 1984, these acts occurred "over ten times," on occasion two to three times a week. During one encounter in the trailer, Greene put a gun to the victim's head and threatened to shoot her if she told anyone of his conduct. The final incident in the trailer occurred two to three weeks before the last week of school in 1984. As a result of conversations in the

---

1. Criminal threatening is a class D crime that, when committed with the use of a dangerous weapon, is enhanced to a class C offense. *See* 17–A M.R.S.A. § 1252(4) (1983).

fall of 1984 with representatives from the Department of Human Services (DHS) and the Bangor police, the victim was removed from her father's home and at the time of trial was living with her mother and stepfather.

On November 5, 1984, Greene was indicted on nine counts of gross sexual misconduct and one count of criminal threatening with a dangerous weapon. On March 17, 1985, the Superior Court partially granted Greene's motion for discovery, took his motion for a bill of particulars under advisement, and denied a motion for psychiatric examination of the victim. The DHS was ordered to produce for *in camera* inspection its records relating to the victim. On March 29, the court released certain DHS documents to the defendant and impounded others that were not released. On April 8, the court denied the motion for bill of particulars because the dates on which the alleged incidents occurred could not be further particularized.

A jury trial was held on May 22 and 23. At the close of the evidence, the defendant moved orally for judgment of acquittal and after the closing arguments, moved for a mistrial. Both motions were denied. During its deliberations, the jury sent a note to the trial justice asking whether the "[f]irst Indictment equals bedroom incident?" After consulting with counsel, the justice responded "no." The jury returned a verdict of guilty as to each count. The court subsequently granted the defendant's motion for judgment of acquittal on Count I only.

■ Greene first contends that the evidence was insufficient to convict him of gross sexual misconduct. He specifically challenges the uncorroborated testimony of the victim. A victim's uncorroborated testimony may support a verdict unless it is "contradictory, unreasonable, or incredible." *State v. Walker*, 506 A.2d 1143, 1149 (Me.1986). Contrary to the defendant's contention, the victim's testimony at trial was not internally inconsistent, nor was it unreasonable or incredible. The only inconsistencies were between her testimony

at trial and extrinsic evidence of her prior statements. It is the jury's province to assess credibility and to weigh any conflicting testimony. *State v. Hinds*, 485 A.2d 231, 235 (Me.1984). The verdict reveals that the jury chose to believe the victim and not the defendant. *See State v. Kingsbury*, 399 A.2d 873, 876 (Me.1979). Therefore, viewing the evidence in the light most favorable to the State, a jury could rationally have found beyond a reasonable doubt every element of the offense of gross sexual misconduct. *See State v. Dionne*, 505 A.2d 1321, 1323 (Me.1986).

## II. *Motion for Discovery*

■ Greene next argues that the trial court erred in failing to grant his motion for discovery of a psychological evaluation of the victim that was allegedly performed under the auspices of DHS in connection with child protection proceedings. We disagree. No such evaluation of the victim exists in this record. Our *in camera* review of the DHS files impounded by the trial court and those disclosed to the defendant further reveals that the defendant received all documents material to the preparation of his defense. *See* M.R. Crim.P. 16(b)(2)(A); *State v. Burnham*, 350 A.2d 577, 579 (Me.1976); *cf. State v. Carmichael*, 444 A.2d 45, 48 n. 1 (Me.1982) (no absolute right of discovery exists with respect to reports of past psychiatric evaluation of the victim of a crime); *State v. Storlazzi*, 191 Conn. 453, 459, 464 A.2d 829, 833 (1983) (access to psychiatric records is determined by whether they sufficiently disclose material probative of victim's ability to comprehend, know and relate truth to justify breach of confidentiality). We therefore find no error in the court's denial of further discovery of the DHS records.

## III. *The "Bedroom Incident"*

■ Greene also asserts that he was prejudiced by his belated discovery during jury deliberation that the so-called "bedroom incident" was not the basis for Count

I of the indictment. He contends that the trial court erred in not granting a mistrial, *sua sponte,* and in denying his motion for judgment of acquittal as to counts II through X. We disagree.

Our review of the record discloses that Greene discovered the alleged variance not during jury deliberation, but earlier, when he moved for an acquittal at the close of the evidence. However, he did not move for a mistrial on the ground of prejudicial surprise at this time or later, during jury deliberation, nor did he at any time move to strike the testimony of the bedroom incident as prejudicial or ask for a limiting instruction.[2] The record further reveals that he did not move for a judgment of acquittal with respect to Count I after the victim testified in the State's case-in-chief only as to a touching in the bedroom, which was clearly insufficient to establish the alleged gross sexual misconduct. In view of Greene's failure to take advantage of these opportunities to cure the alleged prejudice, we conclude that he did not preserve the error, if any, for review. Assuming the failure to object was a tactical decision, Greene cannot now argue that he was misled, or that he was prejudiced by the court's failure to order, *sua sponte,* a mistrial.[3]

We must accordingly review his belated contention under the obvious error standard of Rule 52(b) of the Maine Rules of Criminal Procedure. *See State v. True,* 438 A.2d 460, 467 (Me.1981). In view of the trial court's ruling resolving any doubt with respect to Count I in Greene's favor by acquitting him thereof, we find no obvious error. We further reject his contention that the acquittal on Count I rendered the evidence insufficient to prove Counts II

through X beyond a reasonable doubt, concluding it is highly probable that the confusion underlying Count I did not affect the judgment on the remaining nine counts. *See Delong,* 505 A.2d at 807–808; *True,* 438 A.2d at 467. Review of the record demonstrates that the jury had before it ample evidence that eight acts of sexual misconduct and one incident of criminal threatening with a dangerous weapon had occurred in addition to the "bedroom incident." Greene therefore takes nothing on these points on appeal.

IV. *Motion for Bill of Particulars*

We now address Greene's contention that the trial justice erred in denying his motion for a bill of particulars. Greene argues that he was entitled to the specificity of a bill of particulars, which would have enabled him to avoid prejudicial surprise at trial. The indictment here charged gross sexual misconduct "on or about" nine specific dates ranging from December 15, 1983, to May 5, 1984. Recognizing that this case presents the "not unusual situation of a child victim with very unspecific indications of dates for the alleged sexual acts," the motion justice, concluding that the dates in the indictment could not be further particularized, denied the motion for bill of particulars. We find no error in this ruling.

■ The date of the offense is not an element of the crime of gross sexual misconduct, except to the extent that the State must prove that the victim was underage when the act took place. *Walker,* 506 A.2d at 1146; *State v. Drown,* 447 A.2d 466, 469 (Me.1982). Indictments alleging that a criminal offense occurred "on or about" a

---

2. It is well settled that evidence of a defendant's prior sexual relations with a victim is admissible to show the relationship between the parties or the intent of the defendant. *State v. DeLong,* 505 A.2d 803, 805 (Me.1986); M.R.Evid. 404(b). However, we have recognized that a limiting instruction serves an important function in minimizing prejudice to a defendant from the admission of evidence of prior unlawful sexual incidents. *See DeLong,* 505 A.2d at 810 (Glassman, J. dissenting); *see, e.g., State v. Wallace,*

431 A.2d 613, 616 (Me.1981); *State v. Heald,* 393 A.2d 537, 543 (Me.1978). Nevertheless, it is the obligation of counsel to request such an instruction. Field & Murray, *Maine Evidence* § 105.2, at 22 (1976).

3. A trial court's failure to declare a mistrial *sua sponte* is reviewed only for obvious error. *State v. Bagley,* 507 A.2d 560, 562 (Me.1986).

certain date need not be dismissed for lack of specificity. *Walker,* 506 A.2d at 1146. The indictment need only be sufficiently specific in alleging the time of the offense to enable the defendant to prepare his defense and to protect him against further jeopardy for the same crime. *Drown,* 447 A.2d at 470.

■ As we recently noted in *Walker,* when the State is not able to pinpoint the dates on which the offenses allegedly occurred any better than it had in the indictment, the State should not attempt to "set outer limits upon the temporal allegations in the indictment" and should not file a bill of particulars. 506 A.2d at 1147. Therefore, the motion justice in the case before us did not err in denying Greene's request for a bill of particulars when the State was unable to articulate its allegations with any greater specificity.

### V. *Prosecutor's Closing Argument*

Greene also challenges the propriety of the prosecutor's closing argument on six grounds. He asserts that the prosecutor 1) told the jury to disregard testimonial inconsistencies; 2) misstated testimony regarding the victim's sexual knowledge; 3) exhorted the jury not to make her a victim, thereby playing upon the jury's sympathy; 4) stressed the victim's age; 5) denigrated a defense as "harping" upon inconsistencies and 6) misstated the evidence with respect to the firearm incident. He objected specifically only to the reference to "harping" and made a general objection to the State's characterization of the prosecutrix as an eleven year-old victim. At the conclusion of the prosecutor's rebuttal argument, Greene also moved for a mistrial, citing the prosecutor's mischaracterization of the timing of the firearm incident.

■ Because the defendant did not object at trial to the first two alleged improprieties, they constitute a basis for vacating the judgment only if the prosecutor's argument "was in its probable effect upon the jury 'a seriously prejudicial error tending to produce manifest injustice.' " *True,*

438 A.2d at 467 (citation omitted); *see also State v. Hebert,* 480 A.2d 742, 750 (Me. 1984). Finding no obvious error, we turn to Greene's third and fourth points regarding the prosecutor's emphasis on the girl's age and his attempt to evoke sympathy by exhorting the jury not to make her a victim. It is clearly improper for a prosecutor to appeal to the jury's sympathy with emotionally charged and inflammatory remarks. *State v. Burgoyne,* 452 A.2d 393, 396 (Me.1982). However, the record reflects that the prosecutor was attempting to explain apparent inconsistencies in the victim's statements or behavior. We have stated that argument based on an analysis of the evidence, for any position with respect to the credibility of a witness, is not ethically objectionable. *See State v. Vigue,* 420 A.2d 242, 246–47 (Me.1980).

The defendant did make a general objection to the prosecutor's reference to the prosecutrix as "this poor little girl, 11 year-old victim." The presiding justice, *sua sponte,* immediately instructed the jury that what lawyers said in argument was not evidence. In addition, he later instructed the jurors to view the evidence objectively and divest themselves of sympathy or prejudice. At no time did the defendant move for a mistrial or otherwise protest that the prosecutor's remarks denied him a fair trial. By such inaction the defendant has failed to preserve the claimed errors since he must be taken to have acquiesced in the measures adopted by the trial justice. *Hinds,* 485 A.2d at 235; *see also Vigue,* 420 A.2d at 246–47. Accordingly, we review under the obvious error standard. *See True,* 438 A.2d at 467. In view of the court's curative instruction, we find no such error.

■ With respect to Greene's fifth contention, a prosecutor is not at liberty to disparage the legal principles upon which a defense is based or demean a legitimate defense. *State v. McDonald,* 472 A.2d 424, 426 (Me.1984). However, Greene's reliance upon *McDonald* is misplaced because refer-

ence to the defense strategy as "harping upon inconsistencies" is clearly distinguishable from the prosecutor's conduct in *McDonald*, which was designed to awaken suspicion in the jury that the defenses were mere subterfuge. *Id.* at 425–26 (numerous disparaging references to defenses as "a very common excuse," "red herring," "smoke screen," "convenient fallback"). We conclude that the error here, if any, was harmless because it is highly probable that this reference did not affect the judgment. *See DeLong*, 505 A.2d at 807–808; *cf. Hinds*, 485 A.2d at 238 (argument not improper when prosecutor did not denigrate defense itself, but attempted to point out its limitations).

 Finally, Greene moved for a mistrial on the specific ground that the prosecutor misstated the evidence with respect to when the threatening incident with the firearm occurred. The victim testified that "one time" out in the trailer, Greene had put a gun to her head because he had found out about her revelation of their first encounter to a cousin. The prosecutor questioned in closing "after you've had a gun put to your head and been told not to tell anybody ... what kind of a situation is she in then?"

Defense counsel challenged the suggestion that the jury could find that the sexual encounters had continued under compulsion because the indictment charged that the gun threat had occurred in May, after all of the encounters had already taken place. The trial justice denied the mistrial motion and instructed the jurors that counsel's arguments were not evidence and that they were to rely on their own recollections. The justice also offered to instruct the jury, if requested, that Count X was not to be interpreted as an allegation that the threatening caused any of the sexual acts, but the request was not made.

A high degree of necessity is required before a trial court can conclude that termination of proceedings is justified. *State v. Rowe*, 480 A.2d 778, 782 (Me.1984). The trial justice has broad discretion whether to order a mistrial, "and his decision is entitled to great deference on appeal except where the record reveals a failure to exercise sound judicial discretion." *Id.* Here, in view of the ambiguous nature of the victim's testimony, and the justice's curative instruction, we find no abuse of discretion in the denial of the motion for mistrial. *See Hinds*, 485 A.2d at 235 (curative instruction, less drastic than mistrial, may be sufficient to preserve fair trial); *State v. Hilton*, 431 A.2d 1296, 1302 (Me.1981) (curative instruction will be deemed inadequate to eliminate prejudice of objectionable evidence only where there are exceptionally prejudicial circumstances or prosecutorial bad faith).

Accordingly, we conclude that Greene's challenge to the propriety of the State's closing argument is without merit.

The entry is:

Judgment affirmed.

All concurring.